UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00238-GNS

COUSINS SMOKEHOUSE, LLC                                              PLAINTIFF

v.

LOUISVILLE PROCESSING & COLD STORAGE, INC.; and
INTERSTATE PACKAGING COMPANY                                       DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Motion for Summary Judgment filed by Defendant
Interstate Packaging Company ("Interstate") (DN 45), the Motion to Set Aside Deemed
Admissions and to Substitute Previously Filed Responses to Admissions filed by Defendant
Louisville Processing & Cold Storage, Inc. ("LPCS") (DN 51), and the Motion for Leave to File
Sur-Reply filed by Plaintiff Cousins Smokehouse, LLC ("Cousins") (DN 56).  The motions are
ripe for adjudication.  For the reasons stated below, Interstate's motion is **GRANTED**, Cousins'
motion is **DENIED**, and LPCS's motion is **DENIED AS MOOT**.

## I.        <u>BACKGROUND</u>

In April 2017, Cousins entered into an agreement with LPCS to produce pork jerky for
Cousins.  (First Am. Compl. ¶¶ 7-8, DN 17).  In October 2017, Cousins also entered into an
agreement with Interstate to provide packaging for the finished jerky.  (Def.'s Mot. Summ. J. Ex.
1, at 27, DN 45).  In late 2017, LPCS disclosed to Cousins that mold had been found in some of
the packaged jerky and was therefore unsuitable for sale or consumption.  (First Am. Compl. ¶¶
14-15).  It was discovered that 470 bags of product were moldy and as a result the United States

Department of Agriculture ("USDA") disposed of the entire inventory, consisting of 27,072 bags of jerky totaling a loss of $120,000.  (First. Am. Compl. ¶¶ 20-21).   The USDA allegedly investigated and found that LPCS was at fault for the defective product.  (First Am. Compl. ¶ 23).

In his action, Cousins asserts claims of breach of the implied warranty of merchantability (Count IV) and breach of the implied warranty for use for a particular purpose (Count V) against Interstate.  (First Am. Compl. ¶¶ 53-62).  In particular, Cousins alleges that the bags produced by Interstate contributed to Cousins' loss.  (First Am. Compl. ¶ 55).  Cousins also asserted against LPCS claims for breach of warranty, unjust enrichment, and conversion.  (First Am. Compl. ¶¶ 32-52).

Testing was conducted by LPCS in January 2018 with representatives from Interstate present.  (Def.'s Mem. Supp. Mot. Summ. J. 19, DN 45-1).  Analysis was conducted to determine what amount of pressure the jerky bags could withstand.  (Def.'s Mem. Supp. Mot. Summ. J. 19).  Although LPCS alleges that 22 inHg (inches of mercury) is the industry pressure standard for the bags and  Interstate claims that the figure is 15 inHg, no party in this action has identified an expert regarding this standard.  (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. A, at 5, DN 52-1; Def.'s Mem. Supp. Mot. Summ. J. 19).  Testing conducted by Cousins indicated none of the bags tested—either containing mold or uncontaminated—failed at a pressure rate of 18 inHg; 22% of samples without mold failed at 22 inHg; and 17.7% of moldy samples failed at 22 inHg.  (Def.'s Mot. Summ. J. Ex. 2, at 7, DN 45-3).

## II.    JURISDICTION

Jurisdiction is proper based on 28 U.S.C. § 1332, as the Plaintiff and Defendants are of diverse citizenship and the amount in controversy exceeds $75,000.

### III.     STANDARD OF REVIEW

On a motion for summary judgment, the opposing party must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (Cir. 1995). "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 199 (Ky. 2001) (citation omitted). As the movant, Interstate bears the burden of demonstrating the absence of a genuine dispute of fact that may affect the ultimate outcome of the action when the appropriate law is applied. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Assuming the defendant satisfies his or her burden of production, the plaintiff "must— by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 725 (6th Cir. 2014) (citing *Celotex Corp.*, 477 U.S. at 324). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)

### IV.     DISCUSSION

There are three primary issues to be resolved in the motion for summary judgment: (i) whether Interstate's choice of law provision is included in its contract with Cousins; (ii) whether Interstate effectively disclaimed all implied warranties; and if not (iii) whether Cousins has established a genuine issue of fact for trial on its breach of warranty claims against Interstate.

3

A.     **Interstate's Motion for Summary Judgment (DN 45)**

Cousins and Interstate entered into a contract under which Interstate was to provide bags to package Cousins' jerky.  (Def.'s Mot. Summ. J. Ex. 1, at 27).  Interstate presented Cousins an initial quote stating the price and quantity at which it offered to sell the bags.  (Def.'s Mot. Summ. J. Ex. 1, at 1).  Cousins then sent a purchase order for 30,000 bags, along with payment.  (Def.'s Mot. Summ. J. Ex. 1, at 2).  Finally, Interstate sent Cousins a sales order, detailing the specifics of the transaction.  (Def.'s Mot. Summ. J. Ex. 1, at 3).  Interstate's sales order included additional terms, such as a choice of law clause designating Tennessee law as controlling and a waiver of all warranties, including any implied warranty of merchantability.  (Def.'s Mot. Summ. J. Ex. 1, at 1).  Over the year-long relationship, multiple purchase orders were submitted by Cousins with subsequent sales orders returned.  (Def.'s Mot. Summ. J. Ex. 1, at 2-27).  The question is whether Interstate's additional terms regarding choice of law and waiver of warranties are part of the contract.

The viability of the additional terms in Interstate's sales orders is governed by Section 2-207 of the Uniform Commercial Code ("U.C.C."), which provides:

> (1)     A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
> (2)     The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:
>> (a)     The offer expressly limits acceptance to the terms of the offer;
>> (b)     They materially alter it; or
>> (c)     Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
> (3)     Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract

consist of those terms on which the writings of the parties agree, together with any
supplementary terms incorporated under any other provisions of this chapter.

KRS 355.2-207; Tenn. Code Ann. § 47-2-207.  The parties appear to agree that the Interstate sales

orders were either an acceptance or a confirmation and that Section 2-207 applies.  (Def.'s Mem.

Supp. Mot. Summ. J. 12; Pl.'s Resp. Def.'s Mot. Summ. J. 4-5).[1]  Interstate's sales order form did

not specify that the choice of law provision and the warranty disclaimer were conditioned upon

express acceptance, but indicated these additional terms would be deemed accepted unless

Interstate was otherwise notified within five days of the order.  (Def.'s Mot. Summ. J. Ex. 1, at 3).

As both parties are merchants, Section 2-207(2) provides that any additional terms are not

incorporated if they materially alter the offer.

### 1.    *Choice of Law Clause*

The first issue is whether Interstate's choice of law provision is validly included under the

terms of the contract.  Kentucky courts have not ruled extensively on this issue.  Courts have

widely held, however, that a choice of law provision which is unilaterally added constitutes a

material alteration.  *See Trans-Tec Asia v. M/V Harmony Container*, 435 F. Supp. 2d 1015, 1029-

30 (C.D. Cal. 2005) (applying U.C.C. § 2-207 and finding that "the Choice of Law Clause

constituted an additional term which materially altered the [] contract.  Thus, the Choice of Law

Clause did not become a part of the [] contract."); *Greer v. T.F. Thompson & Sons, Inc.*, No. CV-

---

[1] Interstate's price quotation was not an offer, as it omitted several key elements, such as a
description of the product, price, quantity, and terms of payment which indicated that the quotation
was "a mere invitation to negotiate . . . ."  *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572
(6th Cir. 1999).  Further, "the letter's use of the term 'price quotation,' lack of language indicating
that an offer was being made, and absence of terms regarding quantity, time of delivery, or
payment terms established that the letter was not intended as an offer."  *Id.* (citing *Interstate Indus.,
Inc. v. Barclay Indus., Inc.*, 540 F.2d 868, 873 (7th Cir. 1976)).  While quantity and price were
included in the quote, the sheet stated "quote" and Cousins had to request shipping terms in its
purchase order.  (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. D, DN 53-4).  Accordingly, Cousins'
purchase order was the offer, while Interstate's sales order functioned as an acceptance.

10-0799-PHIX-SMM, 2011 U.S. Dist. LEXIS 7180, at *8 (D. Ariz. Jan. 19, 2011) (holding that a choice of law provision included in a confirmation materially alters a contract as it could result in surprise or hardship owing to the differing laws of each jurisdiction); *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 352 (M.D.N.C. 1995) (finding that choice of law clauses constituted material alterations to the contract); *Galaxy Int'l v. White Stores, Inc.*, 88 F.R.D. 311, 321 (W.D. Pa. 1980) (holding that a choice of law clause was a material alteration when not discussed by the parties).

Regardless, the distinction between Tennessee and Kentucky law is largely immaterial in this case. Interstate cites *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382 (6th Cir. 2000), to assert that the most significant contacts test should be performed to determine whether the choice of law provision is valid. *Id.* at 391. The court in *Wallace* discussed a choice of law provision both parties had knowingly agreed to where the underlying substantive law drastically impacted the disposition of the case. *Id.* A significant contacts analysis is not necessary in the instant case. "Federal courts sitting in diversity must apply the choice-of-law principles of the forum." *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Kentucky applies the most significant relationship test to determine which state law to apply in the absence of a clear choice of law by the parties. *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 566-67 (Ky. 2012). The Court must conduct a choice-of-law analysis only if a conflict exists between the laws of the two states at issue. *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)).

Both Kentucky and Tennessee have adopted and codified U.C.C. § 2-207. KRS 355.2-207; Tenn. Code. Ann. § 47-2-207. Interstate contends that Tennessee law governs, but as

Tennessee courts point out, the question of choice of law is not material where both jurisdictions have adopted substantially similar versions of the U.C.C. *Lee v. Cox*, 18 U.C.C. Rep. Serv. 2d 807, 809 n.7 (M.D. Tenn. 1976). There is a strong preference for Kentucky courts to apply Kentucky law. *Wallace*, 223 F.3d at 391. Where both Kentucky and Tennessee have adopted substantially similar versions of U.C.C. § 2-207, no conflict is perceived, and the Court will apply Kentucky law to the claims against Interstate. *See Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.*, 353 F. Supp. 3d 631, 635 (W.D. Ky. 2018) (holding that where both states had adopted the U.C.C., choice of law provision requiring New York law would not be applied).

### 2. *Implied Warranty Disclaimer*

The second question presented under Section 2-207 as to the terms of the contract is whether Interstate's disclaimer of warranty provision is valid. The official commentary to U.C.C. § 2-207 expressly states that a warranty disclaimer is a material alteration to the terms of a contract:

> Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are:  a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches . . . [and] a clause requiring that complaints be made in a time materially shorter than customary or reasonable.

U.C.C. § 2-207 cmt. 4. Under Tennessee law, a warranty disclaimer is a material alteration. *See Barrette Outdoor Living, Inc. v. Vi-Chem Corp.*, No. 2:13-CV-289, 2015 WL 12547568, at *4 (E.D. Tenn. Aug. 31, 2015).

Interstate cites *Schultz & Burch Biscuit Co. v. Treetop, Inc.*, 831 F.2d 709 (7th Cir. 1987), to support its contention that the conduct of the parties in conducting multiple transactions with one another constituted a course of dealing whereby Cousins accepted the terms in the sales order. (Def.'s Resp. Mot. Summ. J. 10-11 (citing *Schultz*, 831 F.2d at 710-11)). *Schultz* concerns the addition of an arbitration clause, which is not addressed in the commentary to the U.C.C. (Def.'s

Resp. Mot. Summ. J. 10, Pl.'s Resp. Def.'s Mot. Summ. J. 6).  The court found, in the absence of a specific provision in the U.C.C. indicating otherwise, an arbitration clause would not constitute undue surprise and come as a material alteration if it was customary in the trade or the party against whom enforcement is sought had ample notice.  *Schultz*, 831 F.2d at 714-15.  There had been a confirmation form containing notice of the arbitration provision sent after each of nine orders.  *Id.* What Interstate fails to point out, however, is that the court in *Schultz* conducted this analysis in the absence of a specific example from the U.C.C. commentary regarding arbitration provisions. *Id.* at 712-13.  As the U.C.C. comments address a warranty disclaimer as a material alteration, further analysis into course of dealing is not required.

Where additional terms are added to a contract, they are "to be construed as proposals for addition to the contract."  KRS 355.2-207.  There is no evidence that Cousins expressly accepted the waiver of warranty provision.  Further, an offeree's silence with respect to an offered term is not sufficient to reject or to modify it under the U.C.C.  *A & A Mech., Inc. v. Thermal Equip. Sales*, *Inc.*, 998 S.W.2d 505, 512 (Ky. App. 1999); *see also Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 n.4 (6th Cir. 1972) ("[A]lthough Subsection 2-207(2)(c) provides that certain additional terms can be accepted by the offeror's failure to object, nothing in the Code suggests that silence or inaction can be recognized as an offeror's assent in the present context.").

The court in *SFEG Corp. v. Blendtec, Inc.*, No. 3:15-CV-0466, 2017 WL 395041 (M.D. Tenn. Jan. 30, 2017), addressed facts similar to those at bar.  The order acknowledgment sent by the seller contained a warranty disclaimer stating that the buyer needed to specifically object or the terms would be included.  *Id*. at *6.  The buyer repeatedly accepted shipments and was sent

the terms and conditions approximately nine times. *Id.* The court found that accepting shipments and placing more orders did not constitute assent to the warranty disclaimer. *Id.* at *8.

The same reasoning applies in this case. Accordingly, the implied warranty waiver in Interstate's purchase orders was not included in the contract between Cousins and Interstate.

### 3. *Breach of Warranty Claims*

Cousins alleges breach of the implied warranty of merchantability (Count IV) and the implied warranty for use for a particular purpose (Count V). (First Am. Compl.). Interstate argues that the applicable industry standard for the durability of its packaging is 15 inHg and Cousins responds that Interstate has failed to produce an expert who establishes the applicable durability standard for jerky bags. (Def.'s Mem. Supp. Mot. Summ. J. 18; Pl.'s Resp. Def.'s Mot. Summ. J. 11). Interstate maintains that, even if its bags did not meet the standard for durability, Cousins cannot prove causation. (Def.'s Mem. Supp. Mot. Summ. J. 18). Interstate's burden as a movant can be satisfied if it demonstrates that the nonmoving party has failed to establish an essential element of its case for which it bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322.

The official commentary to U.C.C. § 2-314, comment 13, states that "in an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." Further, "a plaintiff seeking to recover on a claim against a retailer for breach of implied warranty must establish two elements: (1) that the product was sold in a defective condition, and (2) that the defect caused her injury." *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir. 2000) (internal citation omitted). Under Kentucky law, a plaintiff has the burden of establishing causation in claims for breach of an implied warranty. *Morales v. Am. Honda*

*Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995) (citing *Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. 1972)).  In particular:

> [T]he plaintiff has the burden to establish legal causation and [] this legal causation may be established by circumstantial evidence.  While reasonable inferences are permissible, a jury verdict must be based on something other than speculation, supposition, or surmise.  The type of evidence that will support a reasonable inference must indicate the probable as distinguished from a possible cause.

*Huffman*, 475 S.W.2d at 633.  Causation or proximate cause is gauged by the substantial factor test.  *See Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980); *see also Chandler v. Edgar W. Long, Inc.*, 623 F.2d 1139, 1143 (6th Cir. 1980) (holding under Kentucky law, "substantial factor" governs the degree of proof).  Causation can be proven by circumstantial evidence and "the evidence must be sufficient to tilt the balance from possibility to probability."  *Calhoun v. Honda Motor Co., Ltd.*, 738 F.2d 126, 130 (6th Cir. 1984) (quoting *Perkins v. Trailco Mfg. & Sales Co.*, 613 S.W.2d 855 (Ky. 1981); *Fields v. W. Ky. Gas Co.*, 478 S.W.2d 20 (Ky. 1972); *Holbrook v. Rose*, 458 S.W.2d 155 (Ky. 1970)).[2]

Cousins has failed to offer evidence sufficient to satisfy its burden of proof that any failure of Interstate's product, regardless of the standard for durability, caused the jerky to develop mold.  The only evidence cited by Cousins is the testing performed by LPCS which appears inconclusive regarding either breach or causation, and no expert has been offered.  (Pl.'s Resp. Def.'s Mot. Summ. J. 11).  Accordingly, Cousins cannot meet its burden of identifying an industry standard

---

[2] *Harrison Constr. Co. v. Ohio Turnpike Comm'n*, 316 F.2d 174, 178 (6th Cir. 1963) (applying Ohio law) ("We conclude that a showing of causal connection between the breach  of contract alleged and the damage allegedly suffered is part of [plaintiff's] prima facie case on which it sustains the burden of proof."); *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, No. 5:08-cv-1342, 2010 WL 750141, at *3-4 (N.D. Ohio Mar. 1, 2010) (causal connection between breach and damages required).

for pressure-testing the packaging and proving causation linking the mold to Interstate's

bags.  "Whether expert testimony is required in a given case is squarely within the trial court's

discretion."  *Green v. Ohio Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. App. 2007) (citing

*Keene v. Commonwealth*, 516 S.W.2d 852, 855 (Ky. 1974)).  As a sister court has noted:

> Although it is probably likely that most implied warranty claims will concern
> manufacturing defects, that need not be the case.  The plaintiff is under no
> obligation to specify his perceived defect when suing under a warranty theory, nor
> to offer expert testimony as to its existence.  To the extent that he chooses not to
> specify a defect or offer expert testimony, he may very well do so at his peril . . . .

*Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 676 (E.D. Mich. 2002).  In *Thompson I.G., LLC*

*v. Edgetech I.G. Inc.*, 590 F. App'x 532 (6th Cir. 2014), the court found that in an action for breach

of warranty, "the causation issues here are too complex for the jury to decide without the help of

expert testimony." *Id.* at 538.[3]  Without expert testimony to interpret the testing done by LPCS or

establishing causation between the mold and Interstate's packaging, Cousins has not met its burden

to produce sufficient evidence to create a jury issue regarding causation.

The significance of Cousin's failure to produce expert testimony regarding breach and

causation is underscored by admissions contained in correspondence to LPCS from Cousins' CEO,

E. Scott Shea ("Shea").  Shea noted:  "Not only did the bags not leak at 15 inHg, but they also had

zero failures at 18 inHg.  A minority portion failed at 22 in Hg, but there was no statistical

---

[3] *See also V & M Star Steel v. Centimark Corp*., 678 F.3d 459, 466 (6th Cir. 2012) ("Each party presented expert reports and affidavits concerning whether there were any industry standards applicable . . . ."); *High Concrete Tech., LLC v. Korolath of New England, Inc.,* No. 1:07-CV-00395, 2009 WL 1586155, at *2 (S.D. Ohio June 4, 2009) ("[T]he Court cannot enforce a warranty when the parameters of such warranty remain unclear, and when there is a lack of expert testimony to convince that Court that the stated figures in the range below 5,200 psi do not 'approach' such level.").

difference in the failure rates for molded and non-molded product." (Def.'s Mot. Summ. J. Ex. 2, at 7). Shea further stated:

> The test results do not support LPCS's theory and do not explain how "good" non-molded bags failed at 22 inHg, but also didn't allow mold to grow. Even more problematic for the LPCS theory is that only 8 of the "bad" molded bags failed at 22 inHg. If the bags were indeed defective, then all or most of them should have failed and revealed leaks at 22 in Hg. Instead, 82% of the "bad" bags with mold passed LPCS's 22 inHg test, thus indicating that there is no statistically significant correlation between molded product and defective bags. Evidence indicates that bags randomly leak when placed under extreme pressures of 22 inHg.

(Def.'s Mot. Summ. J. Ex. 2, at 7). Shea conceded "Interstate Packaging had no reason to accept blame." (Def.'s Mot. Summ. J. Ex. 2, at 7).

Cousins' lack of expert proof regarding causation coupled with Shea's admissions reflect the absence of any genuine issue of material fact concerning Cousins' ability to sustain its burden of proof on its breach of warranty claims against Interstate. As a result, Interstate's motion for summary judgment will be granted.

### B.   LPCS's Motion to Set Aside Deemed Admissions and to Substitute Previously Filed Responses to Admissions (DN 51)

Interstate sent requests for admission to LPCS which were deemed admitted due to LPCS submitting responses after thirty days had passed. (Def.'s Mem. Supp. Mot. Summ. J. 7). After the motion for summary judgment, LPCS filed a motion to substitute its late response and set aside the tardy admissions due to inadvertent mistake. (Def.'s Mot. Set Aside 1, DN 51). Cousins argues that Defendant LPCS's admissions to Interstate are not binding on Cousins. (Pl.'s Resp. Def.'s Mot. Summ. J. 9). "Clearly, the deemed admissions of [a] codefendants cannot bind [a defendant] where he actually responded to plaintiff's requests in a timely and legally sufficient manner." *Riberglass, Inc. v. Techni-Glass Indus.*, 811 F.2d 565, 566 (11th Cir. 1987) (citation omitted).

12

For the reasons outlined above, the Court is granting summary judgment for Interstate. Thus, LPCS's responses to Interstate's requests for admissions are immaterial.  Accordingly this motion will be denied as moot.

### C.    Cousins' Motion for Leave to File Sur-Reply (DN 56)

Cousins moves for leave to file a sur-reply to Interstate Packaging's summary judgment motion.  (Pl.'s Mot. Leave File Sur-Reply, DN 56).  Generally speaking, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-CV-00048-GNS, 2019 WL 3536038, at *14 (W.D. Ky. Aug. 2, 2019) (internal quotation marks omitted) (quoting *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012)).  Even so, granting leave to file a sur-reply may be appropriate in the court's discretion when "a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) (citation omitted).

In this case, Interstate did not raise any new substantive arguments in its reply. Accordingly, Cousin's motion will be denied.

### V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant Interstate's Motion for Summary Judgment (DN 45) is **GRANTED**, and Plaintiff's claims against Defendant Interstate Packaging Company are **DISMISSED WITH PREJUDICE**.

2.    Defendant LPCS's Motion to Set Aside Deemed Admissions and to Substitute Previously Filed Responses to Admissions (DN 51) is **DENIED AS MOOT**.

    3.      Plaintiff's Motion for Leave to File Sur-Reply (DN 56) is **DENIED.**

Greg N. Stivers, Chief Judge

United States District Court

March 3, 2022

cc:    counsel of record